IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

OSAYAMIEN OGBEIWI,                )
                                 )
      Plaintiff,               )
                                 )
VS.                              )     NO. 1:20-cv-01094-STA-cgc
                                 )
CORECIVIC AMERICA, et al.,        )
                                 )
      Defendants.              )


## ORDER GRANTING MOTION TO DISMISS OF DEFENDANT CORECIVIC AMERICA

Plaintiff Osayamien Ogbeiwi,[1] an inmate previously housed at Whiteville Correctional Facility ("WCF"), filed this action pursuant to 42 U.S.C. § 1983, asserting claims under the Eighth and Fourteenth Amendments against CoreCivic America and various prison officials.  He has also asserted a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. Defendant CoreCivic has filed a motion to dismiss the complaint.  (ECF No. 21.) Plaintiff has filed a response to the motion (No. 29), and Defendant has filed a reply.  (ECF No. 30.)  For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**.

### Standard of Review

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When considering a Rule

---

[1]  Plaintiff filed his complaint pro se but is now represented by counsel.

12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992). Under *Twombly* and *Iqbal*, Rule 8(a)'s liberal "notice pleading" standard requires a complaint to contain more than a recitation of bare legal conclusions or the elements of a cause of action. Instead, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

<u>Background</u>

The complaint alleges as follows.[2] Plaintiff was involved in a physical altercation with other WCF inmates and was stabbed four times on March 25, 2019. After the incident, he was placed in administrative segregation housing at the facility, i.e., protective custody. The Warden, the Assistant Warden, Chief Sean (a/k/a "Shawn") Walton, and other high-level officers allegedly met to decide what to do with Plaintiff. Initially, they decided to send Plaintiff to another prison since he was still being threatened at WCF. However, the assailant(s) told the prison officials that it was safe to let Plaintiff be with them. In light of this promise, the decision was made to release Plaintiff back into general population despite the protestations of Plaintiff and his family who wanted Plaintiff sent to another prison.

---

[2] On January 22, 2021, the Court granted Plaintiff's motion to amend his complaint to increase his request for damages. (Ord. ECF No. 12.) Because Plaintiff made no changes in his allegations, the Court has referred to the original complaint in this order.

Defendant Walton allegedly threatened Plaintiff with administrative punishment if he did not go back to live with his assailants.   Plaintiff complied under duress. On April 26, 2019, Defendant Walton moved Plaintiff to another housing unit at WCF despite concerns for his safety. Plaintiff alleges that, after he entered his new housing unit, he was involved in another physical altercation with other inmates and he sustained physical injuries including twenty-four stab wounds.  Plaintiff was allegedly told that the Assistant Warden had "directed" the assailants to have a meeting with Plaintiff and that the CCA Administration had "sold him out to his enemies."   According to Plaintiff, the policies, customs, and procedures of CoreCivic were the moving force behind the assault.

Plaintiff further alleges that, after the second altercation, he was treated by offsite medical providers at Jackson General Hospital and at Regional Medical Center. Plaintiff claims that his provider at Regional Medical Center advised that he undergo hand surgery; however, a WCF physician – "Unknown Named Black Male Doctor" – and a WCF nurse practitioner refused to allow him to return for the surgery. He alleges that WCF had a policy of not responding to medical grievances and that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Plaintiff also alleges that he could not be "cuffed in the back" due to pain related to injuries that he allegedly sustained during the April altercation.   Plaintiff complains that Defendant Walton refused to allow him to participate in visitation without being cuffed in the back unless he had something in writing from the medical staff stating that he could not be cuffed in back.  Defendant Walton refused to take him to the medical department to get such a statement. As a result, Plaintiff alleges that he "was not allowed to go to visit because being cuffed in the back hurt too much" and he was not allowed to have a visit if his hands were not

3

cuffed in the back.  Plaintiff alleges that he was treated differently than other inmates in violation of the Fourteenth Amendment's equal protection clause and in violation of the ADA.

Plaintiff was transferred from WCF to Morgan County Correctional Facility ("MCCX") on September 16, 2019. While housed at MCCX, Plaintiff alleges that he was housed with six attackers who were involved in the April 2019 incident at WCF.

Analysis

Section 1983

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws."  42 U.S.C. § 1983.  In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." *Humes v. Gilless*, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)).

Generally, local governments are not considered to be "persons" under § 1983 and, thus, are not subject to suit. *Monell v. N.Y.C. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978).  The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons. *See Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) ("A private corporation that performs the traditional state function of operating a prison acts under the color of state law for purposes of § 1983.") When "execution of a government's [or private prison's] policy or custom, whether made by its lawmakers or by those whose edicts or

4

acts may fairly be said to represent official policy, inflicts the [complained of] injury[,]" municipalities and other local governments [or private prisons] are considered a "person" for purposes of § 1983. *Bd. Of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*).

Accordingly, § 1983 liability does not attach to a private prison based on the actions of its employee tortfeasors under the doctrine of respondeat superior; instead, such liability is imposed on the basis of the prison's own customs or policy. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (stating that, although a private corporation that operates a prison acts under the color of state law for purposes of § 1983, a plaintiff may not sue such a corporation solely on the basis of respondeat superior liability); *see also D' Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (reiterating that, under § 1983, entities are responsible only for their own illegal acts and may not be held vicariously liable for the actions of their employees (relying on *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011)).  Thus, plaintiffs who seek to impose liability on private prisons under § 1983 must prove that an action pursuant to an official policy or custom caused their injury.

Official policy includes the decisions or the acts of its policymaking officials.  *Pembaur v. Cincinnati*, 475 U.S. 469, 480 – 481 (1986); *see also Bryan Cnty.*, 520 U.S. at 403-04 (explaining that "official policies" are "decisions of … those officials whose acts may fairly be said to be those of the" entity itself).  Alternatively, a "custom" is a practice that, while not formally approved, "may fairly subject a [private prison] to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404.  Such a custom "must include '[d]eeply embedded traditional ways of carrying out state policy.'"  *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir.1996) (quoting *Nashville, Chattanooga & St. Louis*

*Ry. Co. v. Browning*, 310 U.S. 362, 369 (1940)).

Absent proof of an unconstitutional policy, a private prison is not liable for a single incident resulting in a constitutional violation. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985). Furthermore, a private prison is not liable unless there is an "affirmative link between the policy and the particular constitutional violation alleged" or "causal connection." *Id.* Thus, to establish liability under § 1983, Plaintiffs "must adequately plead (1) that a violation of a federal right took place; (2) that the defendant acted under color of state law; and (3) that the private prison's policy or custom caused that violation to happen." *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)). *See also Price v. Bailey*, 2009 WL 198962 at \*2 (W.D. Mich. Jan. 26, 2009) (explaining that the plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy).

Here, Plaintiff contends that his rights under the Eighth Amendment and the Fourteenth Amendment were violated by Defendants.[3]   Plaintiff alleges that the policies and customs of CoreCivic were the driving force behind the deprivation of his constitutional rights.   According to Plaintiff, the Warden, CoreCivic's final decisionmaker, made the decision to return him to general population even though he knew or should have known that Plaintiff would be assaulted again. He also contends that CoreCivic had a policy of not responding to inmates' grievances and of refusing to transfer inmates to another prison and had a policy of being deliberately indifferent to the medical needs of inmates. Defendant CoreCivic has responded that Plaintiff cannot show that it has a policy or custom that resulted in Plaintiff's injuries which is necessary in order to

---

[3]  Plaintiff does not contest Defendant's assertion that any claim(s) based on the March 25, 2019 altercation is time-barred by the one-year statute of limitations or that Plaintiff cannot state a

establish CoreCivic's liability.

The Eighth Amendment prohibits cruel and unusual punishment. In order to establish an Eighth Amendment claim for deliberate indifference to an inmate's safety, the inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In this case, the Court finds that Plaintiff has sufficiently alleged that he was seriously injured when he was assaulted and stabbed by his fellow inmates and the assault resulted in his hospitalization.

As for whether the Warden was a final policymaker, "mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Miller v. Calhoun Cty.*, 408 F.3d 803, 814 (6th Cir. 2005) (quoting *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993)). "[C]onsideration should ... be given to whether the employee ... formulates plans for the implementation of broad goals." *Miller*, 408 F.3d at 814 (quoting *Hager v. Pike County Bd. of Educ.*, 286 F.3d 366, 376 (6th Cir. 2002) (quoting *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 914 (6th Cir.1991))).

Although Plaintiff has acknowledged that the complaint does not specifically describe the Warden as a final policymaker, for the purpose of deciding this motion only, the Court finds that the Warden was the final policymaker for the prison. However, this does not help Plaintiff in his claims against CoreCivic because there are no factual allegations in the complaint that show that any act of the Warden established a deliberately indifferent policy, procedure, or custom that

claim upon which relief can be granted against CoreCivic for any action or omission that

resulted in the assault on Plaintiff.  Instead, the only factual allegations are that Plaintiff was told that there would be a staff meeting with the Warden to discuss his housing placement and that an officer later told him that he had been instructed by the Warden to move him back into general population.  However, the complaint specifically states that Defendant Walton told Plaintiff that he (Walton) had made the housing assignment, thus negating the Warden's involvement in the decision as to Plaintiff's ultimate placement.

Although Plaintiff has alleged that "[t]he policies, customs and procedures of the Defendants have been the 'moving force' behind the Plaintiff being subjected to a brutal assault by a group of inmates armed with knives" (Cmplt. p. 1, ECF No. 1), as discussed above, it is not enough for a complaint to contain conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings to support the allegations. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).  "Blanket assertions" or a "formulaic recitation of the elements of a cause of action" as made by Plaintiff in this case are not sufficient to state a claim under § 1983. *Twombly*, 550 U.S. at 555-56 n.3.

Any claim by Plaintiff against CoreCivic for its failure to transfer him to another prison also fails. As noted by Defendant, inmates have no protected right to be housed in a particular institution.  *See Williamson v. Campbell*, 44 F. App'x 693, 695 (6th Cir. 2002) (citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (recognizing that an inmate has no justifiable expectation that he will be incarcerated in any particular prison)).  Plaintiff's claim that CoreCivic has a policy of not responding to inmate grievances also fails.  An inmate does not have a constitutionally protected interest in an inmate grievance procedure.  *See Proctor v. Applegate*,

_____

occurred at MCCX.

661 F. Supp. 2d 743, 755 (E.D. Mich. 2009) (citing *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance.")).

Plaintiff also alleges that CoreCivic had a policy or custom of being deliberately indifferent to the serious medical needs of the inmates.  "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.  As with failure to protect claims, Eighth Amendment deliberate indifference medical claims must contain both an objective component: "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).  As stated above, Plaintiff has sufficiently alleged a serious medical need.

Plaintiff claims that his provider at "Regional Medical Center" requested that he undergo hand surgery; however, a WCF physician and a WCF nurse practitioner purportedly declined to return him for the surgery. According to Plaintiff, the "Black Male Doctor of WCF," when asked why Plaintiff was not provided surgery, stated, "Oops! We've dropped the ball on that one!" Plaintiff has failed to provide sufficient facts to establish that either of these medical providers was acting pursuant to any type of policy, procedure, or custom of denying medical care attributable to CoreCivic.  Instead, the allegations concern the physician and the nurse

practitioner.[4]

Because Plaintiff has failed to allege any facts to establish that an official policy or custom of CoreCivic was the moving force behind any alleged constitutional deprivations concerning the alleged assaults and/or his medical treatment and because CoreCivic cannot be held liable under § 1983 solely on a respondeat superior theory, Plaintiff's § 1983 claims asserted against CoreCivic under the Eighth Amendment must be dismissed.

Plaintiff has also alleged that his equal protection rights under the Fourteenth Amendment were violated when he was not allowed to have visitation.  Plaintiff acknowledges that the prison had a policy of not allowing visitation unless the inmate's arms were cuffed behind his back.  Due to Plaintiff's injuries, he could not be cuffed in that manner and, thus, was not allowed visitation.   An officer allegedly told Plaintiff that he could not receive an accommodation under this policy unless a doctor specifically ordered an accommodation.

"The Equal Protection Clause prohibits a state from denying to any person within its jurisdiction the equal protection of the laws." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006) (internal quotation marks omitted).  "The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Id.* "Fundamentally, the Clause protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Id.*

In the present case, Plaintiff has not alleged that he was treated differently than other

---

[4]  The finding that Plaintiff has not stated an Eighth Amendment claim against CoreCivic is in no way determinative of his purported Eighth Amendment claims against the individual defendants. It is well-settled that prison doctors or officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (citations omitted).

inmates.  In fact, he specifically alleges that the officer who required him to be cuffed behind his back in order to participate in visitation was acting in conformity with the prison's policy. Additionally, he cannot show that a fundamental right was implicated or that he was in a suspect class.  "Disabled persons are not a suspect class for purposes of an equal protection challenge…. A state may therefore treat disabled persons differently, so long as its actions are rationally related to some legitimate government purpose." *S.S. v. Eastern Kentucky Univ.*, 532 F.3d 445, 457 (6th Cir. 2008); *see also Rawls v. Sundquist*, 929 F. Supp. 284, 291 (M.D. Tenn. 1996) ("Under the equal protection clause, prison administrators are entitled to place restrictions on the opportunities, rights and privileges accorded protective custody inmates, as compared to those inmates in the general population, provided that those restrictions are rational rather than arbitrary and capricious.").  Moreover, inmates do not generally have a clearly established constitutional right to receive visits.  *See Bellamy v. Bradley*, 729 F.2d 416, 420 (6th Cir. 1984) ("Prison inmates have no absolute constitutional right to visitation[,]" and limitations may be imposed to meet penological objectives such as the maintenance of security and order.) Accordingly, the Court finds that Plaintiff's § 1983 claim against CoreCivic under the Fourteenth Amendment must also be dismissed.

<u>Americans with Disabilities Act</u>

The ADA prohibits discrimination against persons with disabilities in three areas of public life: employment (Title I, 42 U.S.C. §§ 12111-12117); public services, programs, and activities (Title II, 42 U.S.C. §§ 12131-12165); and public accommodations (Title III, 42 U.S.C. §§ 12181-12189). Title I, which applies only to employment in the workplace, has no bearing on Plaintiff's claims. However, Plaintiff contends that he can maintain claims under Title II and

Title III.[5]

Title II provides a cause of action for qualified individuals with a disability who by reason of that disability have been denied participation in or denied benefits of the services, programs or activities of a "public entity." 42 U.S.C. § 12132. A "public entity" is defined by the ADA as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)." 42 U.S.C. § 12131(1). A private corporation is not considered a "public entity" for purposes of Title II, nor are privately run prisons even though they may contract with a state to provide services. *See Vick v. CoreCivic*, 329 F. Supp. 3d 426, 441-42 (M.D. Tenn. 2018) (citing cases for the proposition that a private prison is not a "public entity" under the Title II of the ADA).

In *Dodson v. CoreCivic*, 2018 WL 4800836 (M.D. Tenn. Oct. 3, 2018), the court explained:

> Title II of the ADA applies to prisoners housed in state prisons. *Maher v. Tennessee*, 2018 U.S. Dist. LEXIS 45420, 2018 WL 1404405 at * 4 (W.D. Tenn. March 20, 2018). However, even though CCA may have contracted with the State of Tennessee to provide governmental prison services, that does not convert CCA into a "public entity" for purposes of Title II. *Id.* CCA, as a private prison, is not subject to Title II of the ADA. 42 U.S.C. § 12181(7); *Anderson v. South Central Correctional Facility*, 2015 U.S. Dist. LEXIS 134114, 2015 WL 5794524 at * 4 (M.D. Tenn. Oct. 1, 2015); *Logan v. Corrections Corp. of America*, 2012 U.S. Dist. LEXIS 81969, 2012 WL 2160276 at * 6 (M.D. Tenn. June 12, 2012); *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010).

*Dodson*, 2018 WL 4800836 at *7. Accordingly, Plaintiff cannot maintain a claim against CoreCivic for a violation of Title II.

---

[5] In this section, the Court has assumed without deciding that Plaintiff does, indeed, have a qualifying disability under the ADA.

Title III prohibits discrimination on the basis of disability in places of "public accommodation." 42 U.S.C. § 12182(a). The phrase "public accommodation" is defined for purposes of Title III in terms of twelve categories of facilities leased or operated by private entities, none of which include jails or prisons, *see* 42 U.S.C. § 12181, and courts, have consistently held that a jail or prison does not constitute a place of "public accommodation" as defined in Title III. *See White v. Stephens*, 2014 WL 4925867 (W.D. Tenn. Sept. 30, 2014) (adopting report and recommendation of Magistrate Judge finding that "[a] jail or prison facility does not constitute a place of 'public accommodation' as defined in the applicable statutory provisions"); *see also McGowan v. CoreCivic*, 2017 WL 4249380 (W.D. Tenn. Sept. 25, 2017) (reiterating that "private prisons are not among those private entities that are considered a 'public accommodation'").   Therefore, Plaintiff's claims against CoreCivic for violations of Title III must also be dismissed.

State Law Claims

Plaintiff asks the Court to read into the complaint state common law claims if the federal claims against CoreCivic are dismissed.  The Court declines to do so.  As explained in *Medlin v. City of Algood*, 355 F. Supp. 3d 707 (M.D. Tenn. 2019),

> With the dismissal of Medlin's federal claims against Bilbrey, the Court will not retain jurisdiction over the state law claims against that Defendant because, pursuant to 28 U.S.C. § 1367(c)(3), there is a "strong presumption in favor of declining to exercise jurisdiction over supplemental state-law claims after dismissing federal anchor claims[.]" *Martinez v. City of Cleveland*, 700 F. App'x 521, 523 (6th Cir. 2017). This holds true even where, as here, federal claims remain against other defendants. Retention of state law claims, however, may be appropriate where the case has been pending for a long time, discovery has been completed, the record is voluminous, a court has spent significant time on the litigation, and there are pending motions for summary judgment. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004).

*Medlin*, 355 F. Supp. 3d at 719 (some citations omitted).

As in *Medlin*, this case is neither old nor voluminous.  It was filed little more than a year ago on April 23, 2020, and there have only been approximately thirty docket entries thus far. All the defendants have not been served with process, and, consequently, no scheduling order has been entered. The only real involvement in this case by the Court so far has been to rule on the present motion. In light of these factors, retaining jurisdiction over the supplemental state law claims (to the extent that any are alleged) against CoreCivic is unwarranted.

<u>Summary and Conclusion</u>

Plaintiff has failed to state a claim against Defendant CoreCivic under the Eighth or Fourteenth Amendments and under the ADA.  To the extent that Plaintiff has alleged state law claims against Defendant, the Court declines to exercise supplemental jurisdiction over those claims.   Accordingly, the motion to dismiss of Defendant CoreCivic is **GRANTED**, and Defendant is hereby **DISMISSED** from this action.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:  May 26, 2021.

14