IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| OSAYAMIEN OGBEIWI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-01094-STA-cgc |
| ) | |
| ASSISTANT WARDEN McCLEAN, ) | |
| JENNIE ROBERTS, ) | |
| SHAWN WALTON, and ) | |
| NURSE PRACTITIONER TASMA ) | |
| ROBERTSON, ) | |
| ) | |
| Defendants. ) | |

### ORDER ON DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. NORFLEET THOMPSON AND DR. DENIS GILMORE

Before the Court is Defendants Assistant Warden McClean ("McClean"), Jennie Roberts ("Roberts"), and Tasma Robertson ("Robertson")[1] (collectively "Defendants") Motion to Exclude the Testimony of Dr. Norfleet Thompson ("Dr. Thompson") and Dr. Denis Gilmore ("Dr. Gilmore") (Docket Entry ("D.E.") #108). The instant motion was referred to the United States Magistrate Judge for determination. (D.E. #109). For the reasons set forth herein, Defendants' Motion is GRANTED, and Dr. Thompson and Dr. Gilmore shall not be permitted to testify as expert witnesses pursuant to Rule 702.

---

[1] The instant motion was additionally filed on behalf of Defendant Mohamed Azam ("Azam"); however, on May 4, 2023, after the filing of this motion, Plaintiff voluntarily dismissed his claims against Azam with prejudice. (*See* D.E. #111).

Additionally, although Shawn Walton ("Walton") was a named defendant at the time the instant motion was filed and remains one at present, the instant motion does not state that it was filed by him.

I.  **Introduction**

   a. *Plaintiff's Complaint*

This case arises from injuries Plaintiff suffered during two different attacks committed by fellow inmates while he was incarcerated at Whiteville Correctional Facility ("WCF") and the subsequent medical care and lack of protection from further injury that he received from Defendants. (Compl. at PageID 24, 26-30).[2] Plaintiff's Complaint contains three causes of action: federal law claims under the Eighth and Fourteenth Amendments pursuant to 42 United States Code Section 1983 ("Section 1983); and, a claim for violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (*Id*. at PageID 24).

The Complaint alleges that on March 25, 2019 Plaintiff was attacked in his cell by a group of inmates who stabbed him four times with knives. (Comp. at PageID 26, ¶ I.1). Shortly after the assault, Plaintiff was placed in Administrative Segregation ("Ad. Seg.") pending further investigation of the incident. (*Id*. at ¶ I.2). On or about April 16, 2019, McClean came to Ad. Seg. and informed Plaintiff that threats were being made against him by gang members and that he would likely be severely harmed if he were placed back into general population. (*Id*. at ¶ I.4). Plaintiff was advised that there would be a staff meeting with various individuals, including Roberts, who would determine how he would be housed going forward. (*Id*.) On April 17, 2019, McClean informed Plaintiff that it was still not safe for him to enter general population and that he would be transferred to another prison. (*Id*. at ¶ I.5).

On April 24, 2019, Plaintiff was informed that he would be released back into general population as there was no longer a threat. (*Id*. at ¶ I.6). On April 25, 2019, Plaintiff's family

---

[2] Plaintiff additionally alleges that he suffered from distress while subsequently incarcerated with his attackers from WCF at the Morgan County Correctional Complex ("MCCX"); however, these allegations do not pertain to the four Defendants that remain part of this case or the issues presented in the instant motion. (Compl. at PageID 24 & PageID 26-31).

members expressed their concerns about Plaintiff's move back into the general population and requested that someone with WCF speak with Plaintiff. (*Id*. at ¶ I.7). Plaintiff requested to be transferred to another prison, but Roberts, Robertson, and Walton advised Plaintiff that he would be returning to general population. (*Id*. at PageID 26-27, ¶¶ I.8-I.12). Plaintiff protested that he would be harmed, but Walton returned him to the "G-Unit" of general population. (*Id*. at ¶ I.13).

When Plaintiff arrived at G-Unit, a group of inmates who did not live there were allowed to enter and told Plaintiff that McClean allowed them to meet with him. (*Id*. at ¶ I.15). Upon entering his cell, Plaintiff was locked inside and stabbed twenty-four times by inmates armed with knives. (*Id.* at ¶ I.18). Plaintiff suffered a punctured lung and a lacerated tendon and also sustained injuries to his arms, leg, back, chest and face. (*Id.* at ¶ I.19). Plaintiff received care for his injuries at Jackson General Hospital and Regional Medical Center. (*Id.* at ¶ I.19-20). Plaintiff was scheduled to have surgery at RMC[3] on May 17, 2019, to repair the tendon in his hand. (*Id*. at ¶ I.23).

Upon returning to WCF, Plaintiff was told by Robertson, who was employed as a nurse practitioner for WCF, that he would not be returning for the surgery even though Plaintiff made many requests to do so. (*Id*. at PageID 29, ¶ I.24). During Plaintiff's follow-up visit at WCF on May 22, 2019, WCF's doctor told Plaintiff in response to his missed surgery, "We've dropped that ball on that one! Probably will leave permanent damage to your hand now!" (*Id.*) On July 22, 2019, Plaintiff returned to RMC for a follow up visit but the orthopaedic surgeon explained that it was too late for surgery for his hand. (*Id*. at PageID 29, ¶ I.25). Plaintiff alleges that Robertson

---

[3] The surgeon is not named in the Complaint but was later identified as Dr. Norfleet Thompson through medical records provided by the Defendants. (*See* D.E. #108-2 at PageID 617).

was in part responsible for this decision not to permit him to receive the surgery and that her actions showed deliberate indifference to his medical needs. (*Id.*)

Plaintiff further alleges that Walton showed indifference to his injuries by the manner in which he insisted Plaintiff be handcuffed to receive visitors. (*Id.* at PageID 30, ¶ I.28). Because Plaintiff could not tolerate being handcuffed in the usual manner and could not get documentation from the medical staff stating that a different method was necessary, Plaintiff alleges that Walton discontinued his visitation privileges. (*Id.* at PageID 30, ¶¶ I.28-I.29).

### b. *Scheduling Order & Discovery*

On May 12, 2022, the District Court issued a Scheduling Order. (D.E. #82). With respect to general discovery deadlines, the Scheduling Order required Initial Disclosures pursuant to Rule 26(a) to be provided by May 26, 2022 and all discovery to be completed by April 12, 2023. With respect to discovery on expert witnesses, the Scheduling Order sets forth the following:

**EXPERT WITNESS DISCLOSURES PURSUANT TO FED. R. CIV. P. 26:**

- **(a) DISCLOSURE OF PLAINTIFF'S (OR PARTY WITH BURDEN OF PROOF) RULE 26 EXPERT INFORMATION:** January 8, 202[3].

- **(b) DISCLOSURE OF DEFENDANTS' (OR OPPOSING PARTY) RULE 26 EXPERT INFORMATION:** February 22, 2023.

- **(c) PLAINTIFF'S SUPPLEMENTATION UNDER RULE 26:** March 8, 2023.

- **(d) DEFENDANTS' SUPPLEMENTATION UNDER RULE 26:** March 22, 2023.

- **(e) EXPERT WITNESS DEPOSITIONS:** April 12, 2023.

**MOTIONS TO EXCLUDE EXPERTS UNDER F.R.E. 702 / DAUBERT MOTIONS:** April 26, 2023.

On May 18, 2022, Defendants provided their Initial Disclosures. (Def.'s Rule 26(a)(1) Disclosures, filed at D.E. #120-1). As to medical documentation, Defendants' Initial Disclosures

4

state that Plaintiff's medical file from the Tennessee Department of Corrections ("TDOC") is maintained by TDOC and that "[a]ny medical records resulting from any outside medical care/treatment provided to Plaintiff [are] in possession of said medical providers[.]" (*Id*. at PageID 1031, ¶¶ B.1 & B.8).

On June 23, 2022, Plaintiff provided his Initial Disclosures.[4] (Pl.'s Rule 26(a) Initial Disclosures, filed at D.E. #114-1). As potential witnesses, Plaintiff named fifteen individuals and stated that he also sought to call "[a]ny other medical personnel listed in the medical records." (*Id*. at PageID 833). Dr. Norfleet and Dr. Gilmore are not listed by name in Plaintiff's Initial Disclosures.

On August 3, 2022, Plaintiff filed a Response to Defendants' First Interrogatories. (D.E. #114-2). Therein, Plaintiff first identified Dr. Gilmore as a doctor who treated him in October 2021. (*Id*. at PageID 838). Plaintiff stated that, during that visit, Dr. Gilmore opined that his "ongoing injuries to [his] stomach and lungs are from trauma, apparently referring to the stabbing in this case." (*Id*.)

On January 23, 2023, after the expert-information discovery deadline passed, Defendants provided their Amended Rule 26(a)(1) Disclosures. (D.E. #120-4). On January 26, 2023, Plaintiff requested copies of the documents referenced in Defendants' Amended Disclosures. (D.E. #120-2). On January 27, 2023, Defendants sent Plaintiff a USB drive containing the attachments. (D.E. #120-3). Plaintiff states that these documents "contained well over 1000 pages of medical records," including those of Dr. Thompson and Dr. Norfleet, that were "not covered in the first set." (Pl.'s Resp., filed at D.E. #114, at PageID 824 & Exhs. 4-5; Declaration of Drew Justice, filed at D.E. #114-3, at ¶ 2).

---

[4] Plaintiff's Initial Disclosures were provided after the deadline set forth in the Scheduling Order; however, Defendants have raised no issue regarding their untimeliness.

5

On March 8, 2023, Plaintiff provided his Supplemental Non-Retained Expert Disclosures ("Supplemental Disclosures"), which listed Dr. Gilmore and Dr. Thompson as expert witnesses. (D.E. # 108-2). As to the subject matter of Dr. Thompson's proposed testimony, Plaintiff states as follows:

> He examined Ogbeiwi in May 2019 at Regional One hospital regarding the cut tendon in his finger. Initially he scheduled him for surgery shortly thereafter, namely on May 17, 2019, because he felt that . . . time was of the essence. When Ogbeiwi "never showed" for the surgery as scheduled, and did not return to the hospital until July 22, 2019, Dr. Thompson concluded that surgery was no longer a viable option.

(*Id*. at PageID 617).

As to the subject matter of Dr. Gilmore's proposed testimony, Plaintiff states as follows:

> He examined Ogbeiwi at Centennial hospital in October 2021. He concluded that Ogbeiwi's ongoing stomach- or torso-related problems resulted from the traumatic incident in 2019 where Ogbeiwi got stabbed in the chest.

(*Id*. at PageID 618).

### c. *Motion to Exclude*

On April 26, 2023, Defendants filed the instant motion. Therein, Defendants argue that Plaintiff's Supplemental Disclosures are both untimely. They further argue that Plaintiff's attempt to designate his March 8, 2023 disclosures as "supplemental" is not enough to meet Rule 26(e)'s standard for supplemental disclosures such that they would fall within the Court's March 8, 2023 deadline for Plaintiff's supplementation.

On May 10, 2023, Plaintiff filed a Response in Opposition to Motion to Exclude Experts. (D.E. #114). Plaintiff argues that his Supplemental Disclosures were timely filed within both the deadline for supplementation of expert discovery and the deadline for deposition of expert witnesses. Plaintiff contends that, if the Court were to find that they were not timely filed, the fault rests with Defendants because of their delayed disclosure of voluminous medical records,

including those of Dr. Norfleet and Dr. Gilmore, which occurred after the deadline for disclosures of expert information had passed.

On May 12, 2023, Defendants filed a Motion for Leave to File a Reply to Plaintiff's Response in Opposition to Defendants' Motion to Exclude Plaintiff's Proposed Expert Testimony of Dr. Norfleet Thompson and Dr. Denis Gilmore, which was granted. (D.E. #116, #117). Defendants' Reply asserts that, throughout the entirety of this case, Plaintiff neither propounded any form of written discovery upon any Defendant nor, to their knowledge, served any non-party medical provider with a record request or non-party subpoena. Defendants argue that Plaintiff is at least equally situated, if not better positioned, to obtain copies of his own medical records from outside medical providers than are Defendants. Finally, Defendants asserts that they did not delay in disclosing any records to Plaintiff and that the additional 1,000 pages of medical records were given to Plaintiff as a courtesy and were above and beyond what was required under Rule 26(a)(1)(A). (D.E. #120).[5]

## II. Analysis

### a. *Timeliness of Disclosures*

It is undisputed that Plaintiff did not designate Dr. Thompson and Dr. Gilmore by name as potential expert witnesses until after the January 8, 2022 deadline for expert-information discovery had passed. The first question raised is whether any fault for this late designation lies with Defendants.

---

[5] The parties additionally dispute whether Plaintiff's summarization of Dr. Gilmore and Dr. Thompson's proposed expert testimony is sufficient to satisfy Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, which governs the disclosures of expert witnesses who do not provide a written report; however, for the reasons set forth, *infra*, the Court need not reach this issue because Plaintiff's designation of Dr. Gilmore and Dr. Thompson was untimely.

Rule 26(a)(1) of the Federal Rules of Civil Procedure governs Initial Disclosures and sets forth that a party must provide "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Fed. R. Civ. P. 26(a)(1)(A)(ii).

In the section of their Initial Disclosures that addresses this requirement, Defendants list the following medical documentation: "Plaintiff's Medical File as maintained by the Tennessee Department of Correction" and "[a]ny medical records resulting from any outside medical care/treatment provided to Plaintiff in possession of said medical providers." (Defs' Rule 26(a)(1) Disclosures, filed at D.E. #120-1, at PageID 1031, ¶¶ B.1, B.8). Accordingly, Defendants provided that both a TDOC medical file as well as outside medical records existed, that TDOC maintained its file, and that outside medical records were in the possession of those providers. This is sufficient to comply with the requirements of Rule 26(a)(1)(A)(ii). The fact that they later supplemented them with additional documentation is not pertinent to the question of whether they met their obligations under Rule 26(a)(1). Thus, the Court does not find that Defendants bore any fault for the timing of Plaintiff's expert witness disclosures.

The next question is whether Plaintiff's "Supplemental Disclosures" qualify as such so that they should be deemed timely within the Court's March 8, 2023 deadline. Rule 26(e) of the Federal Rules of Civil Procedure provides as follows regarding supplementing discovery:

> **(e) Supplementing Disclosures and Responses.**
>
> > **(1) *In General.*** A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

    **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

    **(B)** as ordered by the court.

  **(2)** *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

  Defendants contend that Plaintiff has not satisfied Rule 26(e)'s requirements because he is attempting to provide entirely new information—namely, designating two new expert witnesses that have never been previously named. *See James Ullman v. Auto-Owners Mutual Ins. Co.*, No. 2:05-cv-1000, 2007 WL 1057397, at *3 (S.D. Ohio Apr. 5, 2007) (stating that supplementation should correct or complete "previously supplied information," not supply "wholly missing information"). Plaintiff argues that he has satisfied Rule 26(e) because his Initial Disclosures stated that he wished for "[a]ny other medical personnel listed in the medical records" to testify and that he is now simply supplementing the previously incomplete information by providing their names.

  Upon review, the Court agrees with Defendants that providing the names of expert witnesses for the first time is not what is contemplated as supplementation by Rule 26(e). The fact that Plaintiff stated in his Initial Disclosures that he wished for "[a]ny other medical personnel listed in the medical records" to testify does not absolve Plaintiff of his responsibility to designate his expert witnesses in a timely manner, particularly as it does not state that he wished for any such individuals to be designated as expert witnesses rather than simply fact witnesses. Accordingly, the Court finds that Plaintiff's designation of Dr. Thompson and Dr. Gilmore as expert witnesses

is untimely and that they shall not be permitted to testify as expert witnesses pursuant to Rule 702. This Order, however, does not affect their ability to testify as fact witnesses.

### III. Conclusion

Based on the foregoing reasons, the Defendants' Motion to Exclude the Testimony of Dr. Thompson and Dr. Gilmore is GRANTED.

**IT IS SO ORDERED** this 11th day of June, 2023.

                                                s/ Charmiane G. Claxton
                                                CHARMIANE G. CLAXTON
                                                UNITED STATES MAGISTRATE JUDGE